FILED
2012 Jun-05  PM 02:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | | |
|---|---|---|---|
| JAMES BORDEN, | ) | | |
| | ) | | |
| Petitioner, | ) | | |
| vs. | ) | Case No. | 5:10-cv-2962-RBP-TMP |
| | ) | | |
| KIM THOMAS,  Commissioner of the | ) | | |
| Alabama Department of Corrections[1]; and | ) | | |
| the ATTORNEY GENERAL OF | ) | | |
| THE STATE OF ALABAMA, | ) | | |
| | ) | | |
| Respondents. | ) | | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is an action filed by an Alabama state prisoner pursuant to 28 U.S.C. § 2254, challenging the constitutional validity of the capital murder conviction he received in the Lawrence County Circuit Court on December 6, 1994.[2]  The petitioner, James Henry Borden, through counsel, filed his petition for writ of *habeas corpus* on November 4, 2010.  In accordance with the usual practices of this court and 28 U.S.C. § 636(b), the matter was referred to the undersigned magistrate judge for a preliminary review and recommendation.

---

1      At the time the petition was filed, Richard Allen was the Commissioner of the Alabama Department of Corrections.  The new commissioner is Kim Thomas, who is substituted by virtue of assuming the office.  *F.R.Civ.P.* 25(d).

2      The petition states the date of conviction as December 6, 1994, while the respondents' answer refers to December 1995 as the date on which he was convicted.  The Alabama Court of Criminal Appeals refers to the conviction date as December 1, 1994.  Borden v. State, 60 So. 3d 935, 935 (Ala. Crim. App. 2004).  It appears from the record that the jury verdict was reached on December 1, 1994, and that the original sentence of death was imposed on December 6, 1994.  The differences in the dates are inconsequential in this case.

## PROCEDURAL HISTORY

On or about December 1, 1994, petitioner was found guilty in a jury trial of the capital murder of Nellie Ledbetter, in violation of Alabama Code § 13A-5-40(a)(13).  The petitioner was charged with a capital crime based upon a previous conviction for murder.  He was represented before trial, at the guilt and penalty phases of trial, and at sentencing by Gregory M. Biggs and Robert F. Tweedy.  He was sentenced to death on December 6, 1994.

Petitioner sought review in the Alabama Court of Criminal Appeals, and his conviction was affirmed on May 29, 1998.  Borden v. State, 769 So. 2d 935 (Ala. Crim. App. 1998).  The appellate court summarized the state's presentation of the evidence, as follows:

> The state's evidence tended to show the following. On the morning of September 5, 1993, the appellant, accompanied by two male companions, drove to the residence of 61-year-old Nellie Ledbetter near Moulton in Lawrence County. While his companions remained in the automobile, the appellant got out and began talking to Ledbetter, who was sitting on the front porch with her two young grandchildren. When Ledbetter's husband appeared on the porch a short time later, the appellant and his two companions left. Approximately 45 minutes later, the appellant returned, this time without his companions.  Ledbetter's husband had gone to run an errand.  The appellant approached Ledbetter, who was still sitting on the porch with her grandchildren, placed a knife to her throat, and told her to come with him.  When Ledbetter refused, the appellant began stabbing her with the knife, fatally wounding her.  The appellant then fled in his car.
>
> Early the next morning, after law enforcement officers obtained a warrant, the appellant was arrested at an apartment in Decatur in Morgan County and was transported to the Lawrence County jail.  DNA testing performed on blood found on clothing the appellant was wearing when he was arrested indicated that the blood was not his, that it could have come from Ledbetter, and that only one out of every 1400 Caucasians had a DNA structure similar to that found in the blood.
>
> At trial, Ledbetter's husband and her two grandchildren identified the appellant as the man they had seen at the Ledbetter house on the day of the murder.  They also identified the appellant's maroon Oldsmobile sedan as the vehicle the appellant was

in that day.  Ledbetter's 11-year-old grandson, Josh, positively identified the appellant as the man he had seen hold a knife to his grandmother's throat and then stab her in the stomach when she refused to go with him.  Josh specifically testified that the appellant told his grandmother, "You better come with me," before stabbing her. (R. 617.)  Medical testimony presented at trial indicated that Ledbetter died as a result of receiving two stab wounds, one to the chest and one to the abdomen.

Larry Joe Peoples, who, along with Donald Suddieth, accompanied the appellant on his first visit to the Ledbetters' residence on the day of the murder, testified that the appellant left Ledbetter's porch and returned to his car when Ledbetter's husband appeared.  According to Peoples, as they drove away from the house, Suddieth told the appellant that the appellant was "just trying to get you some of that old lady's pussy," and the appellant had replied, "Yeah, I probably could if the old man hadn't come up." (R. 686.)

Larry Smith, the circuit clerk for Lawrence County, presented into evidence at trial a certified copy of the appellant's record showing that the appellant had previously been convicted of murder in the second degree on September 5, 1975.

769 So. 2d at 937-38.

Petitioner sought rehearing, which was denied.  He sought *certiorari* in the Alabama Supreme Court, raising the following claims:  (1) that the *petit* jury was not properly sworn as required by Alabama law; (2) that the trial court failed to hold a competency hearing in spite of evidence at trial that created a "*bona fide* doubt" as to his competency to stand trial; (3) that the trial court failed to find that his mental retardation was a mitigating circumstance that entitled him to a reversal of the death sentence; (4) that one of his attorneys at trial had a conflict of interest in that he had a continuing relationship with the Morgan County district attorney's office as a special prosecutor; (5) that the arrest warrant was not properly domesticated in the county in which he was arrested; and (6) that a statement made by the prosecutor during closing argument that he was "mildly mentally retarded so he has a licence to kill" violated his right to a fair trial.  The state

Supreme Court examined the issues raised and further conducted a "plain error" review of the entire record, and affirmed the conviction and death sentence by opinion dated February 4, 2000. Borden v. State, 769 So. 2d 950 (Ala. 2000). Petitioner sought rehearing, which was denied. He then filed a petition for writ of *certiorari* in the United States Supreme Court, which was denied on October 30, 2000. Borden v. Alabama, 531 U.S. 961, 121 S. Ct. 389, 148 L. Ed. 2d 299 (2000).

On October 18, 2001, petitioner filed a petition for post-conviction relief pursuant to Alabama Rule of Criminal Procedure 32. He filed an amended petition on August 21, 2002.[3] He asserted that:

> (1) he was denied effective assistance of counsel during the guilt phase of his trial in that his attorneys:
> (a) were inadequately compensated;
> (b) failed to adequately investigate exculpatory evidence by (i) interviewing Borden's family; (ii) interviewing witnesses who had contact with Borden on the day of the killing; (iii) investigating other suspects; (iv) failing to question character witnesses; (v) failing to present evidence to support a mental health defense;
> (c) failed to challenge the state's investigation and presentation of the theory of guilt;
> (d) failed to procure expert assistance regarding DNA, identification witnesses, and blood spatter;
> (e) failed to conduct an adequate *voir dire*;
> (f) failed to present an adequate opening statement or closing argument;
> (g) failed to object that the *petit* jury was not properly sworn;
> (h) failed to request a competency hearing;
> (i) failed to adequately preserve the record for appellate review;
> (j) failed to object to a jury instruction regarding the voluntariness of Borden's statement;
> (k) failed to ensure Borden's presence at all stages of the proceedings;
> (l) failed to object to numerous instances of prosecutorial misconduct;
> (m) failed to object to the trial court's preliminary instructions regarding the burden of proof;

---

[3]     The trial court never addressed the amendment, and it is not entirely clear whether the ruling applied only to the claims asserted in the original petition.

(n) failed to object that defendant lacked the capacity to consent to the search and to seek exclusion of evidence obtained from the search;

(o)  failed to object to the admission of sealed evidence;

(p) failed to object to use of the 1975 conviction as a predicate for the capital murder conviction;

(q) failed to object to the presence of witness Edgar Ledbetter in the courtroom throughout the trial;

 (r) failed to represent him adequately because Tweedy was intoxicated during trial, yet remained active as lead counsel;

(s) failed to present any reasonable theory of defense;

(t) failed to disclose that Biggs had a conflict of interest because he was involved as a special prosecutor in another county;

(2) he received ineffective assistance of counsel at the penalty phase of trial;[4]

(3) the trial judge erred in failing to recuse himself based on the fact that the firm where he had worked had represented the family of the victim that Borden was convicted of killing in 1975;

(4) the 1975 conviction used to support the capital murder charge was unconstitutionally obtained;

(5) evidence used against him arose from an unconstitutional search and seizure;

(6) evidence from the search should have been suppressed;

(7) he was denied a fair and impartial jury based upon the failure of some jurors to answer questions posed in *voir dire*;

(8) the jury improperly considered extraneous evidence during deliberations;

(9) the trial court failed to hold a hearing outside the presence of the jury regarding the admissibility of DNA evidence, as required by state law;

(10) the trial court failed to allow Borden to present a defense;

(11) the state withheld exculpatory evidence in violation of Brady v. Maryland;

---

4    Because the death sentence has been vacated, the errors alleged with respect to the penalty phase are no longer relevant and will not be set forth here.

(12) the conviction and sentence must be reversed because they were rendered by an unsworn jury;

(13) the court erred in admitting samples of blood evidence that were sealed in violation of his Sixth Amendment rights;

(14) the court erred in failing to exclude witness Edgar Ledbetter from the courtroom;

(15) the court improperly instructed the jury regarding reasonable doubt during the penalty phase of the trial;

(16) the court failed to exclude the unreliable, in-court identification made by a 9-year-old;

(17) the trial court improperly instructed the jury that multiple documents had been signed by Borden, although no such documents had been admitted into evidence;

(18) the trial court failed to hold a competency hearing despite evidence that should have raised a "*bona fide* doubt" as to Borden's competency;

(19) the trial court failed to investigate whether Borden had consented to waive the conflict inherent in Biggs' representation;

(20) Borden's absence from critical stages of the trial violated his constitutional rights and rights under state law;

(21) he was deprived of a fair trial based upon prosecutorial misconduct at the guilt and penalty phases;

(22) the trial court failed to find that Borden's mental condition was a mitigating circumstance;

(23) the trial court improperly allowed use of rape and/or kidnapping as an aggravating circumstance;

(24) the trial court improperly conducted an off-the-record conference with two members of the jury venire;

(25) the trial court improperly instructed the jury that it had determined that Borden's statement was made voluntarily;

(26) the trial court improperly denied Borden's request to be allowed to question of the prospective jurors individually;

(27) the trial court improperly failed to exclude prejudicial photographs of the victim;

(28) the trial court improperly instructed the jury that both the prosecution and the defense had a duty to present evidence, thereby shifting the burden of proof to the defense;

(29) the trial court improperly "double counted" the prior murder conviction as both an element of the capital offense and as an aggravating circumstance;

(30) applying the death penalty to a mentally retarded person violates the federal and state constitutions; citing Atkins v. Virginia, 536 U.S. 304, 122 S. Ct. 2242, 153 L. 2d 335 (2002);

(31) the death penalty as applied in Alabama violates the state and federal constitutions; and

(32) the court must vacate the death sentence pursuant to Ring v. Arizona, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002).

The trial court denied relief on March 14, 2003, and petitioner appealed to the Alabama Court of Criminal Appeals.  The appellate court remanded for a hearing on the issue of petitioner's mental retardation and the application of Atkins.  Borden v. State, 60 So. 3d 935 (Ala. Crim. App. 2004), and ultimately remanded for vacation of the death sentence.  Borden was resentenced to life imprisonment without the possibility of parole.  On the second return to remand, the appellate court found that the claims relating to mental retardation were moot based upon the resentencing, and that claims relating to the penalty phase of the trial similarly were moot.  As to Borden's claims of ineffective assistance at the guilt phase, the court stated:  "His claims of ineffective guilt-phase representation are waived on appeal because his argument does not comply with the requirements of the Alabama Rules of Appellate Procedure."  (Doc. 6-4, p. 2).  The court viewed Borden's brief

as "scattergun" and violative of Rule 28(a)(10) of the Alabama Rules of Appellate Procedure.[5]  The

court further denied many of the substantive claims, finding them barred because they were raised

on appeal, or could have been raised at trial or on appeal but were not.  The court found that the

juror-misconduct claims were not properly before the court on appeal, and that the Brady claim was

precluded because the petitioner failed to plead that it was based on newly discovered evidence.

(Doc. 6-4, pp. 4-7).

Petitioner sought review in the Alabama Supreme Court, which reversed and remanded.  Ex

parte Borden, 60 So. 3d 940 (Ala. 2007).  The state supreme court held that Borden had not failed

to comply with Rule 28, and that he had not waived his claims of ineffective assistance of counsel.

60 So. 3d at 944.  The court further held that the juror-misconduct claims were properly preserved

for appellate review, and remanded for proceedings consistent with its determinations.  The Alabama

Court of Criminal Appeals, in turn, remanded with instructions to the trial court. Borden v. State,

60 So. 3d 947 (Ala. Crim App. 2008).

On January 22, 2009, the trial court entered an order proposed by the state.  The order

reviewed affidavits from the jurors accused of misconduct, and found that the claims were without

merit.  (Doc. 6-5, Ex. E, pp. 5-12).  In the alternative, the court found that the juror-misconduct

claims were due to be denied as procedurally barred pursuant to Alabama Rule of Criminal

Procedure 32.7(d) because they could have been raised in the motion for new trial but were not.

(Doc. 6-5, Ex. E, p. 13).  On return to remand, the Alabama Court of Criminal Appeals on June 18,

---

5      Rule 28(a)(10) requires, in pertinent part, that the argument contain "the contentions of the
appellant/petitioner with respect to the issues presented, and the reasons therefor, with citations to
the cases, statutes, other authorities, and parts of the record relied on."

2010, affirmed in a 72-page unpublished opinion.  (Doc.6-6, Ex. F).  The appellate court agreed that

the juror-misconduct claims failed on the merits, and further that the claims properly were dismissed

as procedurally barred.  The court went on to examine the claims of ineffective assistance of counsel

during the guilt phase, after noting that claims relating to the penalty phase were moot.  Petitioner

sought review by filing a petition for writ of *certiorari*, and, on October 22, 2010, the Alabama

Supreme Court denied the petition.  (Doc.  6-7, Ex G).

  Petitioner filed the instant petition for federal *habeas corpus* relief on November 3, 2010.

He asserts the following claims:

A.   That the trial court failed to hold a competency hearing prior to the trial in spite of the abundant evidence of incompetence;

B.   That counsel rendered ineffective assistance at the guilt phase of trial in that:

1.   payment to counsel for the capital case was grossly inadequate;

2.   defense counsel Biggs had a conflict of interest because he had a continuing involvement with the Morgan County District Attorney's office as a special prosecutor;

3.   defense counsel Tweedy was intoxicated during critical portions of the trial, during preparation for trial, and during meetings with Borden's family;

4.   counsel failed to put forth any theory of defense grounded in law or fact and to investigate "every possible avenue of defense;"

5.   counsel failed to subject the state's case to "rigorous examination and testing" in that counsel failed to adequately cross-examine witnesses, object to irrelevant and prejudicial evidence; and challenge expert testimony;

6.   counsel failed to procure expert testimony relating to DNA evidence, identification witnesses, and blood spatter;

       7.      counsel failed to present an adequate opening statement or closing argument;

       8.      counsel failed to object to the court's failure to properly swear the *petit* jury;

       9.      counsel failed to request a competency hearing;

       10.     counsel failed to object to the prosecutor's improper statement to the jury that Borden was "guilty of capital murder" and "[t]hat is the law;"

       11.     counsel failed to litigate Borden's mental incapacity to consent to a search;

       12.     counsel failed to object to the constitutionality of Borden's 1975 conviction, which provided a predicate for the capital charge;

       13.     counsel failed to object to the presence in the courtroom of prosecution witness Edgar Ledbetter; and

       14.     cumulatively, the errors of counsel constitute ineffective assistance;

    C.     That the trial judge improperly failed to recuse himself on the basis of his participation in the prosecution of the 1975 conviction; and,

    D.     That prosecutorial misconduct deprived petitioner of a fair trial, in that the prosecutor improperly directed the jury to return a guilty verdict, directly told the jury what verdict was appropriate; and prosecutor mischaracterized the facts or argued facts not in evidence.

Pursuant to the court's order to show cause, and after seeking and receiving an extension of time, the respondents filed an answer on December 14, 2010, supported by exhibits. (Doc. 6). By order dated December 15, 2010, the parties were notified that the petition would be considered for summary disposition, and the petitioner was notified of the provisions and consequences of this procedure

under Rule 8 of the Rules Governing Section 2254 Cases.  Petitioner filed a motion for an extension of time in which to file a reply, which was granted.  He filed a reply on January 24, 2011, supported by evidentiary materials.  (Docs. 10, 11).  On November 9, 2011, the court directed the respondents to enlarge the record by providing transcripts of the trial and pretrial hearings.  Respondents filed the additional evidence on November 23, 2011.  (Doc. 13).  On December 14, 2011, the court again directed the respondents to enlarge the record, seeking documents relevant to the petitioner's Rule 32 proceedings.  After seeking and receiving an extension of time in which to comply, the respondents provided additional documents on January 4, 2012.  (Doc. 17).

## DISCUSSION

The respondents seek dismissal of all of petitioner's claims on grounds that they are procedurally defaulted or they have been adjudicated in the state courts, whose determinations are due deference.  Different standards of review apply to these categories of claims.

### A.  Claims Adjudicated on the Merits in the State Courts

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the petitioner can obtain relief on any claim that has been adjudicated on the merits in the state courts only if he shows that the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d)(1) and (2).  See Williams v. Taylor, 529 U.S. 362, 404, 120 S. Ct. 1495, 146

L. Ed. 2d 389 (2000); Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  This standard of

review is strict, and federal courts are required to give "greater deference to the determinations made

by state courts than they were required to under the previous law." Verser v. Nelson, 980 F. Supp.

280, 284 (N.D. Ill. 1997)(quoting Spreitzer v. Peters, 114 F.3d 1435, 1441 (7th Cir. 1997)).  In the

context of claims of ineffective assistance of counsel, the standard if "doubly" deferential, taking into

account both the deference owed to the state courts' conclusions as well as the deference owed to

counsel's decisions.  See Harrington v. Richter, 562 U.S. ___, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624

(2011).

The state-court determination of an issue will be sustained under § 2254(d)(1) unless it is

"contrary" to clearly established, controlling Supreme Court law or is an "unreasonable application"

of that law.  These are two different inquiries, not to be confused.  The Supreme Court has explained:

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may
> obtain federal habeas relief with respect to a claim adjudicated on the merits in state
> court.  Under the statute, a federal court may grant a writ of habeas corpus if the
> relevant state-court decision was either (1) "*contrary to* ... clearly established Federal
> law, as determined by the Supreme Court of the United States," or (2) "*involved an*
> *unreasonable application of* ... clearly established Federal law, as determined by the
> Supreme Court of the United States."  (Emphases added.)

Williams v. Taylor, 529 U.S. 362, 404, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  A state-court

determination is "contrary" to clearly established law in either of two ways:

> First, a state-court decision is contrary to this Court's precedent if the state court
> arrives at a conclusion opposite to that reached by this Court on a question of law.

12

> Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.

Id. at 405.  Likewise, a state-court determination can be an "unreasonable application" of clearly established law in two ways:

> First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Id. at 407; see Putman v. Head, 268 F.3d 1223 (11th Cir. 2001).  Whether the application is "reasonable" turns not on subjective factors, but on whether it was "objectively unreasonable."  The question is not whether the state court correctly decided the issue, but whether its determination was reasonable, even if incorrect.

The Supreme Court has explained that § 2254(d) requires that decisions by the state courts "be given the benefit of the doubt," and noted that "[r]eadiness to attribute error is inconsistent with the presumption that state courts know and follow the law."  Holland v. Jackson, 542 U.S. 649, 124 S. Ct. 2736, 2739, 159 L. Ed. 2d 683 (2004).  Moreover, federal courts are not permitted to substitute their own judgment for the judgment of the state court.  The Eleventh Circuit Court of Appeals has noted that federal *habeas* relief is not available "simply because that court concludes in its independent judgement that the state-court decision applied [the governing legal principle]

incorrectly." <u>Ventura v. Attorney General of the State of Florida</u>, 419 F.3d 1269, 1286 (11th Cir.

2005), quoting <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002).

In <u>Woodford</u>, the Supreme Court stated that "[a]n unreasonable application of federal law is different

than an incorrect application of federal law." 537 U.S. at 24-25. It has been noted that "[e]ven clear

error, standing alone, is not a ground for awarding *habeas* relief" under the "unreasonable

application" standard of § 2254(d). <u>Stephens v. Hall</u>, 407 F. 3d 1195, 1202 (11th Cir. 2005), citing

<u>Lockyer v. Andrade</u>, 538 U.S. 63, 75, 123 S. Ct. 1166, 1175, 155 L. Ed. 2d 144 (2003).


### 1. Mental Competency Hearing -- Claim A

Petitioner's first claim (Claim A) is that he is entitled to *habeas* relief because the trial court

failed to "conduct a competency hearing prior to trial in spite of abundant evidence of incompe-

tence." (Doc. 1, p. 8). This assertion sets forth a procedural due process claim.[6] This issue was

---

6       Petitioner's counsel fails to set forth a substantive due process violation, or, for that matter,
to note the difference between a claim arising from the failure to hold a competency hearing, and the
substantive right to be tried only when mentally competent. Counsel does assert -- within his
procedural due process claim -- that the court allowed "Borden to stand trial despite his legal
incompetency." (Doc. 1, p. 11). The court will not view this bare statement as a separate substantive
due process claim. It is inadequately pleaded, and is unsupported by any evidence at all as to the
petitioner's mental competence at the time of trial. The Eleventh Circuit Court of Appeals has stated:
"A petitioner may make a substantive competency claim by alleging that he was, in fact, tried and
convicted while mentally incompetent." <u>Medina v. Singletary</u>, 59 F.3d 1095, 1106 (11th Cir. 1995).
The court explained, however, that the burden on a petitioner is high: "In contrast to a procedural
competency claim ... 'a petitioner raising a substantive claim of incompetency is entitled to no
presumption of incompetency and must demonstrate his or her incompetency by a preponderance
of the evidence.'" <u>Medina</u>, 59 F.3d at 1106 (citations omitted). Only one who presents "'clear and
convincing evidence' creating a 'real, substantial and legitimate doubt' as to his competence to stand
trial is entitled to a hearing on his substantive incompetency claim." <u>Medina</u>, 59 F.3d at 1106
(citations omitted). Moreover, even if petitioner successfully pleaded such a claim, the claim would
be unexhausted and procedurally defaulted because it does not appear that the substantive
competency claim has been raised in the state courts. The procedural claim clearly is raised in the

presented to the Alabama Supreme Court in the direct appeal and was considered on the merits.  The

state supreme court cited to trial testimony by Dr. Lawrence R. Maier, a clinical psychologist, in

finding that the trial court had not violated petitioner's procedural due process rights, noting that

Maier testified that  his opinion was that Borden was competent to stand trial.  Ex parte Borden, 769

So. 3d at 956.  The petitioner asserts that the trial court improperly relied on the expert's opinion to

the exclusion of other facts known to the court.   The respondents assert that, because this claim was

adjudicated on the merits in the state supreme court, the petitioner can obtain relief on this claim

only if he shows that the Alabama courts' adjudication of the claim "resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding."  28

U.S.C. § 2254(d)(1) and (2).  See Williams v. Taylor, 529 U.S. 362, 404, 120 S. Ct. 1495, 146 L. Ed.

2d 389 (2000); Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  The court agrees that this

standard applies to claims that have been adjudicated on the merits in state court and are then raised

in a federal *habeas* petition.

       The respondents further assert that the standard governing the due process requirements

relating to competency have been set forth by the Supreme Court in Pate v. Robinson, 383 U.S. 375

(1966) and Drope v. Missouri, 420 U.S. 162 (1975).  The petitioner agrees that Pate and Drope

outline the law in this area, but argues that Borden "presented evidence at trial that should have

_____

brief filed with the Alabama Supreme Court, (doc. 6-8, Ex. H, pp. 12-18), where it was addressed
on the merits.  769 So. 2d at 955-56.  The procedural due process competency claim was raised again
in the Rule 32 petition, but was held to be procedurally barred based upon the adjudication of the
claim in the direct appeal.  (Doc. 6-4, Ex. D, pp. 4-6).

raised a '*bona fide* doubt'" as to his mental competence.  (Doc. 1, p. 8).[7]   A review of the standards

governing the court's responsibility for determining a defendant's mental competency begins the

court's examination of the instant claim.

The Supreme Court has long held that the conviction of an accused person while he is legally

incompetent violates due process, and that the states must provide procedures by which this right is

protected.  Pate, 383 U.S. at 378, citing Bishop v. United States, 350 U.S. 961, 76 S. Ct. 440, 100 L.

Ed. 835 (1956).  A failure to properly inquire into the competency of a defendant whose competence

is in question deprives that defendant of his constitutional right to a fair trial.  Pate,  383 U.S. at 385.

*Habeas* relief may be granted to a petitioner who was deprived of his right to receive an adequate

hearing regarding his competence to stand trial.  Pate, 383 U.S. at 386.

The petitioner who prevailed in Pate had a long history of  "disturbed behavior," including

erratic, violent behavior; hallucinations; hearing voices; appearing to be in a daze; and attempting

suicide.  383 U.S. at 378-81.  In addition, the attorneys representing the defendant had "throughout

the proceedings insisted that [petitioner's] present sanity was very much in issue." 383 U.S. at 384.

The Illinois Supreme Court had determined that the defendant in Pate was not entitled to a hearing

on competency in light of the "alertness and understanding" he had shown during interactions with

---

7        Petitioner's counsel asserts that the trial court's error was in "failing to hold a competency
hearing *prior* to trial" (Doc. 1, p. 8, emphasis added), but also argues that evidence presented *at* trial
created a *bona fide* doubt as to petitioner's competence.  The heading of the claim in the instant
petition faults the court only for failure to hold a hearing "prior" to trial, but the argument relating
to the claim refers both to the defendant's pre-trial motions for funds to obtain psychiatric and
psychological examinations of the defendant, and to the testimony of those experts that ultimately
was presented at trial.  This same lack of clarity appeared in the brief filed by petitioner's counsel in
state court.  In adjudicating petitioner's procedural due process claim, the court views the petition
as challenging both the court's actions before and during trial.  Accordingly, the court examines both
what was known to the court prior to and during the trial.

the trial judge, but the United States Supreme Court held that the state court's "reasoning offers no justification for ignoring the uncontradicted testimony of [petitioner's] history of pronounced irrational behavior."  383 U.S. at 385-86.

In Drope, the Supreme Court held that a defendant's procedural due process rights were violated when he was not given a competency hearing after defense counsel moved for a continuance because the defendant had attempted to commit suicide.  The attorney asserted in that motion that the defendant was not of "sound mind."  In addition, a report from a psychiatrist indicated that the defendant had a history of "strange behavior," and offered diagnoses of "(1) Sociopathic personality disorder, sexual perversion, (2) Borderline mental deficiency, [and] (3) Chronic Anxiety reaction with depression."  420 U.S. at 165.

In both Pate and Drope, the duty of the trial court to hold a hearing on the issue of competency turns upon the evidence before the court at the time.  A defendant may be competent to stand trial, even where he has low intelligence, mental retardation, or even mental diseases or disorders.  Competency is not measured by any requisite level of intelligence or even sanity, but involves the "sufficient present ability [of a defendant] to consult with his lawyer with a reasonable degree of rational understanding" and to understand the nature of the proceedings against him.  Dusky v. United States, 362 U.S. 402, 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960).  Although the court has a duty to *sua sponte* evaluate competency where there exists a *bona fide* doubt[8] as to the

---

8       The term "*bona fide* doubt" has been adopted from the Illinois statute at issue in Pate, and while not actually a part of the Supreme Court's reasoning, has nevertheless insinuated itself into the federal courts' analyses of the issues arising out of a Pate claim.  The Alabama statute governing the trial court's duty to assess competency is set forth at Alabama Code § 15-16-21 (1975), which requires a similar inquiry where the trial court has "reasonable ground to doubt [defendant's] sanity."

defendant's competence, the court also "must depend to some extent on counsel to bring issues into focus." Drope, 420 U.S. at 176-77. The Eleventh Circuit Court of Appeals has noted that "[b]ecause legal competency is primarily a function of defendant's role in assisting counsel in conducting the defense, the defendant's attorney is in the best position to determine whether the defendant's competency is suspect." Watts v. Singletary, 87 F.3d 1282, 1288 (11th Cir. 1996). "Accordingly, failure of defense counsel to raise the competency issue at trial, while not dispositive, is evidence that the defendant's competency was not really in doubt and there was no need for a Pate hearing." 87 F.3d at 1288, citing Adams v. Wainwright, 764 F.2d 1356, 1360 (11th Cir.1985), *cert. denied*, 474 U.S. 1073, 106 S. Ct. 834, 88 L. Ed. 2d 805 (1986).

If the petitioner in a *habeas* action can demonstrate that the trial court should have held a competency hearing and failed to do so, he has shown a violation of his constitutional rights, and the state then bears the burden of proving that the petitioner was competent. James v. Singletary, 957 F.2d 1562, 1571 (11th Cir. 1992). Whether a trial court should have held a competency hearing turns upon "what the trial court did in light of what it then knew." Reese v. Wainwright, 60 F.2d 1085, 1091 (11th Cir. 1979). The Supreme Court has enunciated three factors that should be considered in determining whether the trial court violated Pate by not conducting a hearing on competency: (1) evidence of the defendant's irrational behavior; (2) his demeanor at trial; and (3) any prior medical opinion on his competency to stand trial. Drope v. Missouri, 420 U.S. 162, 180, 95 S. Ct. 896, 908, 43 L. Ed. 2d 103 (1975).

18

As to the first factor, "irrational behavior," petitioner's counsel does not argue that Borden engaged in any unusual or bizarre behavior of any kind at any time.  As to the petitioner's demeanor at trial, counsel again makes no argument that the defendant's behavior was unusual or inappropriate. The trial court, of course, had the opportunity to observe the defendant during court appearances. A review of the transcripts of the hearing in which counsel was appointed, the arraignment, and pre-trial hearings (doc. 13-2), indicates that the defendant responded to all questions posed by the court with courteous, appropriate responses.  He expressly and implicitly indicated that he understood what was being explained to him.  The transcripts from pre-trial proceedings further show that the defendant was interacting with his attorneys and was cooperating in the defense of his case.  In addition, a review of the entire transcript of the guilt phase of the trial provides no evidence that the defendant engaged in any irrational behavior, or that defendant's demeanor was in any way remarkable. In short, the petitioner does not argue, and the record does not reflect, that Borden engaged in any irrational behavior or that his demeanor at trial gave rise to any *bona fide* doubt regarding his competency.  Accordingly, the first two factors of the <u>Drope</u> analysis compel the conclusion that the trial court did not violate Borden's constitutional right by failing to conduct a competency hearing.  The third factor requires that petitioner show that the trial court was on notice of a prior medical opinion regarding competency.

The instant claim is based solely on counsel's assertions that the two psychologists called as witnesses at trial determined that Borden was mentally retarded and may have suffered from organic brain damage and/or psychoses.  Reconstructing what occurred prior to trial and at trial in this case has involved some detailed review on the part of this court.  Neither the petitioner nor the

respondents provided the court with a full recitation of the events relating to an evaluation of the defendant's competency.  Upon directing the respondents to enlarge the record, however, the court has been able to review the case action summary, and has obtained a copy of the first motion filed with regard to the defendant's competency.  A review of the entire record compels the conclusion that both the court and counsel were alert to relevant issues relating to competency and performed their duties in compliance with Pate.

Counsel for Borden filed a "Motion for Court-Ordered Mental Examination of Defendant" on December 10, 1993.  (Doc. 13-1, pp. 50-53).  The trial court then entered an "Order for Outpatient Evaluation of Competency to Stand Trail and Mental State at the Time of the Offense" on February 10, 1994, which granted the motion and specifically directed an evaluation by a mental health professional to advise the court, *inter alia*, of the defendant's "ability to understand the nature and object of the proceedings against him" and his "ability to reasonably assist his attorney in his defense." (Doc. 13-1, pp. 90-92).  The court's order further suspended criminal proceedings pending the report.  A copy of the resulting report does not appear to be included in any of the exhibits produced by either party; however, counsel for the defendant filed a motion for funds for additional psychological and/or psychiatric testing on July 22, 1994 (doc. 13-1, pp. 107-12), which recited that the defendant was evaluated by Lawrence R. Maier, PhD, on April 20, 1994.  (Doc. 13-1, p. 109).  It is clear from Maier's testimony at trial that it was his opinion, based on the evaluation of Borden, that Borden was competent to stand trial, and that the opinion was given to the court pre-trial to assist the court in a competency evaluation.  (Doc. 13-6, pp. 92-134).  The motion to obtain funds for additional psychological testing and report was granted by the trial court, which apparently

20

resulted in the examination of Borden by William B. Beidleman, PhD, a forensic psychologist.

Beidleman examined Borden in August 1994. (Doc. 13-1, pp. 142-43). The court reserved ruling

on further requests for testing, pending the report from Beidleman and any further motions from the

defense. Upon defense motions, the court further ordered the production of Borden's school and

medical records for use in the psychologist's evaluation. (Doc. 13-1, pp. 144-150). No copy of

Beidleman's report is contained in the exhibits provided by either party; however, the trial testimony

reflects that Beidleman, like Maier, concluded that Borden was competent to stand trial, and testified

as an expert to that opinion at trial. (Doc. 13-6, p. 162). Maier testified, when asked about Borden's

competency to stand trial:

> Q.     ... Did you make a finding as to his competency to stand trial?
>
> A.     Yes sir, I did.
>
> Q.     All right. Explain -- or tell the jury what your finding was and explain how
> you came to that conclusion.
>
> A.     I offered an opinion. The finding is up to the Court. My opinion was, in
> summary, that he has adequate understanding of the charge against him, he
> can participate sufficiently in his own defense, including testifying, and he
> does have sufficient, although limited, factual and rational understanding of
> the judicial process, partially because of extensive prior experience, including
> even the nature of the charge itself, murder, meaning that he had previously
> been charged and gone through the legal system on a very identical charge,
> based on the information I had. So basically my opinion was that despite some
> weaknesses he could understand and cooperate and even testify if the
> court felt that was important.
>
> Q.     You found that he had a sufficient understanding of what the courtroom
> participants do?
>
> A.     Yes, sir.

Q.      That he understood the adversarial process?

A.      Yes, sir, I felt so.

Q.      And you felt like he could assist his attorney?

A.      He can and has.

Q.      You didn't see anything of a so-called illness nature that would affect his
        competency to stand trial, did you?

A.      The possibility of retardation struck me right away, but as I mentioned earlier,
        I did not feel that the retardation was sufficient to cancel out his capacities in
        the area of importance.

(Doc. 13-6, pp. 120-21).  Beidleman similarly testified that he had concluded Borden was competent

to stand trial.  (Doc. 13-6, p. 162).  Beidleman's testimony further demonstrated that Borden was

evaluated at Bryce Hospital, apparently as part of the trial court's efforts to determine his competency

to stand trial for murder in 1975.  He was deemed competent at that time.  (Doc. 13-6, pp. 158-59).

        In sum, what the trial court had before it was a motion for a mental evaluation.  The court

granted the motion and stayed proceedings.  The first evaluation resulted in an opinion that Borden

was competent to stand trial, although considered illiterate and "mildly mentally retarded."  Borden

appeared at pre-trial proceedings and answered questions appropriately and rationally.  When his

lawyers sought further evaluation, the court granted a motion for funds.  The second evaluation

resulted in a concurring assessment: that Borden, while mentally retarded and possibly mentally ill,

was competent to stand trial.  His behavior was not irrational.  His demeanor in the courtroom was

apparently quite ordinary.  It appeared clear then (and still appears) that his attorneys were

communicating with him and were attuned to his mental state.

22

The only facts that petitioner alleges were known to the court *before* trial were: (1) that defense counsel filed a motion for funds to have the defendant examined by a psychiatrist and psychologist to "assist counsel in discerning, documenting, interpreting, and presenting mitigating circumstances" relevant to the death penalty;[9] and (2) that the defendant had a history of psychiatric treatment which included a report from a psychologist, and (3) that his attorneys were actively pursuing additional psychological and psychiatric tests and evaluations in order to better understand the defendant's mental state. (Doc. 1, p. 9). There are no other facts or circumstances alleged by petitioner to have been known to the trial court before trial began. The trial court granted the motion, thus providing the defendant with funds for further assessment of his mental state. It was not, therefore, unreasonable of the trial court, prior to trial, to fail to conduct a competency hearing, given the absence of any additional information being brought to his attention as a result of the psychological testing authorized. A reasonable judge could have determined that trial counsel was alert to and mindful of the defendant's mental state, and that the only additional facts that came

---

9       The instant petition states that the motion contains counsel's statement that "it is the sincere belief of the undersigned attorneys that the Defendant is now, and has in the past, (including the period during which the alleged crime was committed) suffering [sic] from a mental disease or defect which mandates complete and thorough psychiatric evaluation for purposes of trial." (Doc. 1, ¶ 25). The motion was attached as Exhibit A to the reply brief. (Doc. 11, p.7). The motion does not contain the language "quoted" by petitioner's counsel. The motion states: "Based upon counsel's investigation to date and interviews with his client, it appears that there are impairments of a psychological/psychiatric nature which should be considered as mitigation at the sentencing phase." The petition also states that "Dr. Maier reported that Mr. Borden suffered from hallucinations or delusions, and that he suffered from mental defects." (Doc. 1, ¶ 25). The motion, however, clearly states that there was "not evidence of current hallucinations or delusions." (Doc. 11, p.7). Counsel for petitioner further states that the motion indicates that Borden "suffered from mental defects." (Doc. 1, ¶ 25). Again, whether through inattention or intentional deceit, counsel misrepresents the motion, which actually recites that Dr. Maier "offered a number of diagnostic opinions suggesting a mental defect of which causes are unknown."

within the court's knowledge *at* trial that related to Borden's competency were that two experts testified that Borden was competent to stand trial, and, further, that information relating to strong medication prescribed to him for psychoses was never confirmed.

Having carefully considered all of the evidence and arguments, the court finds that the state courts applied the appropriate Supreme Court law in adjudicating the claim that Borden was denied procedural due process, and the application of that law was not objectively unreasonable.  The court further finds that the state court did not make any unreasonable determination of the facts regarding the defendant's competency.  Consequently, Borden is not entitled to any relief on his claim arising from allegations that he was improperly denied a hearing regarding mental competency, and Claim A is due to be dismissed.

### 2.  Ineffective Assistance of Trial Counsel -- Claim B

The United States Supreme Court has established a national standard for judging the effectiveness of criminal defense counsel under the Sixth Amendment.  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result."  Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The Court elaborated:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must

show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

In order to show ineffectiveness of counsel, the movant must demonstrate that his attorney's performance fell below "an objective standard of reasonableness," 466 U.S. at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 694.  Also, in making such an evaluation, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  466 U.S. at 690.  The effectiveness or ineffectiveness must be evaluated by consideration of the totality of the circumstances.  Stanley v. Zant, 697 F.2d 955, 962 (11th Cir. 1983).  The court must remember that a defendant in a criminal case has a constitutional right only to adequate counsel; he is not entitled to the very best legal representation.  Stone v. Dugger, 837 F.2d 1477 (11th Cir. 1988).

The second requisite element in a claim of ineffective assistance of counsel is a showing of prejudice.  Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant can obtain relief only if the error caused actual prejudice.  See Strickland, 466 U.S. at 687.  Prejudice means a reasonable probability that the outcome of the proceeding would have been different had the errors not occurred.

B.1.  *Inadequate Payment to Counsel* --- Petitioner asserts in the instant petition that he received ineffective assistance of counsel at trial because the state limited the compensation

25

payments for counsel in this and other death penalty cases.  The respondents assert that the claim is procedurally barred because it was denied in the Alabama Court of Criminal Appeals as insufficiently pleaded, and because it was not raised in the Alabama Supreme Court.

After the Alabama Supreme Court remanded the petitioner's ineffective-assistance-of-counsel claims, rejecting the lower appellate court's holding that the claims were waived by failure to comply with Rule 28(a)(10) of the Alabama Rules of Appellate Procedure, the Alabama Court of Criminal Appeals examined the claim relating to attorney fees on the merits.[10]    The court noted:

> ...[B]oth of Borden's attorneys filed affidavits in which they refuted the merits of this claim as to their performance.  One of the attorneys stated that "[t]he rate of pay did not inhibit or diminish the time and effort I put into Junior's case.  In fact, I spent a lot of time on Junior's case that I did not record on the fee declaration."  The other attorney agreed, stating that "[t]he funding in this case did not hinder my work as Junior's attorney nor did the amount of compensation I received diminish my effort to provide the best defense possible at trial."

(Doc. 6-6, Ex. F, p. 17).  The state court applied Strickland to the claim of ineffective assistance, finding that the petitioner had failed to demonstrate either that any attorney's representation was inadequate because of the funding, or that he suffered any prejudice.  While petitioner complains that many of counsel's actions were unreasonable, he does not assert that any of the alleged inadequacies were *caused* by the cap imposed on the hours of pre-trial work that would be paid to counsel in a death penalty case under the then-existing state law.  The court cannot assume that counsel provided

---

10      The appellate court also maintained, again, that the claim was insufficiently pleaded.  (Doc. 6-6, Ex. F, pp. 16-17).  Recent Eleventh Circuit cases have made clear, however, that application of Ala. R. Crim. P. 32.6(b) for insufficient specificity in a Rule 32 petition is an adjudication on the merits for purposes of subsequent *habeas* review.  See Borden v Allen, 646 F.3d 785 (11th Cir. 2011); Powell v. Allen, 602 F.3d 1263 (11th Cir. 2010).  Under this authority, the court reviews the claims of ineffective assistance of counsel as having been resolved on the merits of each claim.

ineffective assistance based solely on the amount he or she was paid; otherwise, all *pro bono* representation would constitute ineffective assistance. The trial court had before it the uncontradicted assertion that petitioner's attorneys worked more hours than they were paid to work. (Doc. 17, Ex. A, Affi. of Tweedy, pp. 646-51). Furthermore, petitioner has failed to allege any action that counsel failed to take because of the restrictions on his own pay. (In fact, most of the allegations relating to ineffectiveness of counsel arise from events unrelated to pay, *i.e.*, alleged conflicts of interest, alcohol consumption, or a failure to consult expert witnesses.)

The Alabama court's decision that no ineffective assistance of counsel occurred due to inadequate compensation is due deference absent a showing by the petitioner that the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Based upon the record before this court, the state court properly applied Strickland to the claim regarding ineffective-assistance arising from the pay limitations, and properly based its findings on a reasonable determination of the facts. Accordingly, Claim B.1 is due to be dismissed.


B.2. *Biggs' Conflict of Interest* --- Petitioner alleges that he received ineffective assistance of counsel in that one of his attorneys, Gregory Biggs, had a continuing relationship with the Morgan County District Attorney's office as a special prosecutor. He raised this claim in the appeal from the Rule 32 petition, and the Alabama Court of Criminal Appeals held that he did not

27

"plead sufficient facts to support his claim," a finding that was subsequently rejected by the Alabama Supreme Court.   The respondents assert that the claim is procedurally defaulted because, in appealing to the state supreme court, Borden did not raise the substantive claim, but instead argued that the finding as to sufficiency of the pleading was in error.   This court is unwilling to apply the O'Sullivan v. Boerckel procedural default where the petitioner was effectively arguing to the state supreme court the only argument that he was able to advance there.   Even so, this court finds that the claim regarding Biggs' alleged conflict is wholly unsupported in fact or law.

Borden's petition alleges simply that "attorney Biggs acted as a special prosecutor in Morgan County while also representing Mr. Borden in adjacent Lawrence County."   Borden has not alleged any facts that would meet either prong of the Strickland analysis.   Borden's argument is simply that Biggs had "a conflict of interest in this case because of his continuing involvement with the Morgan County District Attorney office."   Borden does not allege that any of Biggs' work in the neighboring county bore any relationship to Borden's case, involved any of the same interests or witnesses, or even that the case involved any opposing positions other than that of prosecution rather than of defense.   Petitioner has not demonstrated or even alleged that anything Biggs did was in any way detrimental to his defense, or that any action taken by Biggs was in any way related to his work in Morgan County.    The state courts' assessment that this claim is meritless is not objectively unreasonable.   Accordingly, Claim B.2. also is due to be dismissed.


B.3.   *Intoxication of Counsel* --- Petitioner asserts that he received ineffective assistance of trial counsel in that Tweedy was "intoxicated during critical portions of the trial."   The

evidence offered by the petitioner to support his claim that "Mr. Tweedy's intoxication made him a completely ineffective advocate for his client," and that there was "documented alcoholism" is as follows:

> THE COURT:  All right, this is styled State of Alabama versus James Henry Borden, Jr., Case No. CC-93-228.  I have the Defendant present, Defense Counsel, the State, and members of the Defendant's family.  All right, Mr. Tweedy?
>
> MR. TWEEDY:  Yes sir.  May I remain seated, Your Honor?
>
> THE COURT:  Certainly.
>
> MR. TWEEDY:  Your Honor, we requested a hearing, at least to go on record here. The Court has made an inquiry as to whether I myself have a drinking problem or have been using alcohol prior to coming to Court.  And I felt it was incumbent upon myself as lead counsel to discuss this matter with the family as well as with my client and I have done that.  Members of the family are here today and they tell me that they feel comfortable with my representation.  I would like to ask my client on the record if he still feels comfortable with my representation and if I may do that I will do it now.
>
> THE COURT:  That will be fine.
>
> MR. TWEEDY:  Junior, you and I talked about this issue; is that right?
>
> MR. BORDEN:  Yes, sir.
>
> MR. TWEEDY:  And do you feel comfortable with me representing you?
>
> MR. BORDEN:  Yes, sir.
>
> MR. TWEEDY: And do you want me to stay in this case?
>
> MR. BORDEN:  Yes, sir, I do.
>
> MR. TWEEDY:  Is that sufficient?
>
> THE COURT:  Yes, sir.  There are members of the family present and I understand that you have had conversations with these members of the family, I believe the

Defendant's sister and brother and his sister's husband, and they -- they are present and they feel comfortable with your staying in the case.

MR. TWEEDY:  Maybe I should ask them.

THE COURT:  Go ahead.

MR. TWEEDY:  Bobby, is what I said true?

MR. BOBBY KIRKLAND:  Yes, sir.

MR. TWEEDY:  And I have discussed this at length with y'all in my office?

MR. BOBBY KIRKLAND:  Yes, sir.

THE COURT:  Identified as Bobby Kirkland.  I had initiated an inquiry, I think under the responsibility of a Circuit Judge in any case when I was apprised of the possibility that perhaps there may be some question raised about Mr. Tweedy, whether or not he was drinking and whether or not that would interfere in this particular case as it is a capital case.  After considering it, I initiated an inquiry with Mr. Tweedy, had a conference with him.  And let me state for the record that there has been at no time any real concern on my part as to the fitness of Mr. Tweedy to serve in this case or any other case.  As a matter of fact, it was my intent based on the nature of the case, to give the Defendant the best legal counsel that I knew of that practiced in my Court on criminal matters. And with Mr. Tweedy and certainly with Mr. Biggs I think he has that representation.   I have no question in my mind as to the sobriety or competence of Mr. Tweedy.  That remains.  I have no question as to his fitness or character as he would handle this case and all matters, as a matter or fact, at no times have I ever observed anything in my Court, any conduct of Mr. Tweedy which has done anything but to confirm my opinion that he is an excellent lawyer and represents his clients fully and faithfully.  But it was an inquiry that I had to make and I even had a conversation with Mr. Kirkland about that which I have mentioned to Mr. Tweedy.  And I guess in essence maybe, Mr. Kirkland, it was something that I had to make inquiry of and I think when I talked to Bobby as a representative of the family he had already talked to Mr. Tweedy, so he was aware that I had had a conversation with Mr. Kirkland about that.  For the record, nothing has changed my mind and nothing I have observed.  And I feel that I am quite perceptive about these matters, and it is my responsibility to observe the demeanor of witnesses and parties and even counsel in Court.  And so in six years on the bench, and having Mr. Tweedy in my Court numerous times, I feel, as I have already stated for the record, I have no question about his ability in this case.  Anything further?

30

MR. TWEEDY:  Not from us, Judge.

MR. OSBORN: We have nothing Judge.

THE COURT:  I appreciate everyone being present and it is probably important that
we have this on the record.  And -- we stand adjourned in this case.

MR. TWEEDY:  Thank you, Judge.

(Doc. 13-2, pp. 76-80).   This exchange took place on October 4, 1994, more than a month before

the trial began.   There is no support for counsel's bare argument either that Tweedy had been

drinking at any time before this hearing, or that Tweedy was intoxicated at any juncture during the

trial.  There is no indication in the transcript of the trial that Tweedy was anything short of alert,

prepared, and articulate.  The court thus finds that the claim of ineffective assistance based upon the

alleged intoxication of Tweedy is meritless.  The state courts' conclusion that this claim is meritless

is not objectively unreasonable.  Accordingly, Claim B.3. is due to be dismissed.


        B.4..   *Failure to Investigate Defenses or Put Forth Any Theory of Defense* ---

Petitioner asserted in the appeal from the trial court's denial of the Rule 32 petition that his attorney

rendered ineffective assistance in that he failed to present any theory of defense.  The Alabama Court

of Criminal Appeals held that "Borden failed to meet the specificity requirement of Rule 32.6(b),

Ala. R. Crim. P., by failing to provide any factual basis to support prejudice."  (Doc. 6-6, Ex. F, p.

71).  Under Borden v Allen, 646 F.3d 785 (11th Cir. 2011); Powell v. Allen, 602 F.3d 1263 (11th Cir.

2010), the court treats this as a determination that the claim is meritless.  Petitioner did not, in the

Rule 32 proceedings, assert any theory of defense that should have been pursued, other than to refer

31

to his mental challenges and to allege "community bias" against him; nor did he assert that, if counsel had pursued some other specific defense, the outcome of his trial would have been different. The appellate court applied the appropriate Supreme Court law -- the <u>Strickland</u> test -- and found that the pleadings failed to set forth facts to support the prejudice requirement.  Moreover, the appellate court noted that the trial court specifically examined evidence from the attorneys and the investigator who stated that an independent investigation of facts and witnesses was undertaken, specific lines of defense were thoroughly explored, and a strategic decision was made to pursue a defense of holding the prosecution to its burden of proof beyond a reasonable doubt.  (Doc. 6-6, Ex. F, p. 68).   Absent a showing that the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the petitioner is not entitled to relief.  28 U.S.C. § 2244(d)(1).  The conclusion that this claim is meritless was not objectively unreasonable.  Accordingly, his claim relating to the theory of the defense and investigation into facts and possible defenses (claim B.4.) is due to be dismissed.

B.5.  *Failure to Subject the State's Case to "Rigorous Examination"* --- Petitioner asserts that his trial counsel rendered ineffective assistance in that he failed to subject the prosecutor's case to "rigorous examination and testing."  This claim alleges generally that trial counsel failed to adequately cross-examine witnesses, object to "irrelevant and prejudicial evidence,"

32

or challenge expert testimony offered by the state.  This claim was first addressed during petitioner's Rule 32 proceedings.

The Alabama Court of Criminal Appeals made a merits determination, opining that the claim was not sufficiently pleaded in that it "failed to show what should have reasonably been done by counsel that would have changed the outcome."  (Doc. 6-6, Ex. F,  p. 68).  The appellate court further examined the merits of the claim and found that trial counsel had made a strategic choice to treat the child witnesses[11] and the victim's husband courteously on cross examination to avoid angering the jury and because they deemed the testimony "solid and credible."  (Doc. 6-6, Ex. F, p. 30).  Similarly, the appellate court found that the decision to forego any blood spatter analysis was based on experience and judgment by the attorneys.  The court further noted that, because Borden had informed his attorneys that he had stabbed the victim, they had "no reason to challenge the DNA evidence."  (Doc. 6-6, Ex. F, pp. 28-30).  The court must afford a strong presumption of correctness to such a strategic decision, which is "virtually unchallengeable."  Smith v. Dugger, 840 F.2d 787, 795 (11th Cir. 1988); Elledge v. Dugger, 823 F.2d 1439, 1444 (11th Cir. 1987).   A review of the records indicates that the appellate court made an objectively reasonable assessment of the trial attorney's strategy.  In hindsight, of course, counsel's strategy failed.  Even so, the state courts applied the Strickland analysis, and applied it reasonably to the facts in this instance.

Petitioner's vague allegations that counsel failed to object to "irrelevant and prejudicial" evidence is completely insufficient to state a claim for relief.  The petition does not describe any

---

11    Although petitioner argues, without reference to any evidence, that the children were "coached," there is nothing reflected in the transcript that supports that bare conclusion.

specific evidence that was admitted but was "irrelevant" or "prejudicial."[12]  The only evidence that petitioner specifies other than the children's testimony is "flawed blood evidence."  Petitioner does not offer any support for the bare conclusion that the "blood evidence" was violative of any rule of evidence, or was otherwise objectionable.   It is not even clear whether petitioner is describing eyewitness testimony about the victim's stab wounds, testimony of law enforcement officers or paramedics about blood at the crime scene, or expert testimony regarding the DNA that was given by several forensic scientists.

In a similar vein, petitioner argues generally that his attorneys failed to challenge expert testimony.  However, the petition fails to describe what attack on any expert witness could or should have been made, (see Section B.6., *infra*) or to describe how the outcome of the trial may have been different had that expert been excluded or more rigorously cross-examined.   Accordingly, the state court's determination that the claim was inadequately pleaded cannot be deemed to be contrary to or an unreasonable application of the law or an unreasonable determination of the facts, and claim B.5 is due to be dismissed.

B.6.  *Failure to Procure Expert Testimony* --- Petitioner asserts that his attorney provided ineffective assistance in that he failed to procure expert testimony relating to: (1) DNA evidence; (2) identification witnesses; and (3) blood spatter.   The same claim that counsel unreasonably failed to consult expert witnesses was raised in the Rule 32 petition, and was ultimately

---

12      Evidence that is prejudicial, of course, is often both relevant and admissible.  Petitioner does not argue that the prejudicial effect of any particular evidence outweighed its probative value as may have rendered it inadmissible under the applicable Alabama Rules of Evidence.  He does not point to any evidence that both prejudicial and unconstitutional.

adjudicated on the merits.  The trial court relied upon testimony of the attorneys, who stated that they made strategic decisions not to attack the eyewitness testimony, and which further indicated that the information available to counsel made it clear to them that experts testifying as to DNA or blood spatter were unlikely to aid their client.  (Doc. 6-6, Ex. F, pp. 28-31).  Even to date, petitioner has failed to offer any support for his bare contention that the DNA evidence offered by the state was in any way inadequate or flawed.  The state did not rely upon expert analysis of the blood spatter, and the petitioner has offered nothing more than speculation that the blood found on his pants was "inconsistent" with the cause of death of the victim.[13]  Finally, the petitioner provides no explanation as to what an expert regarding eyewitness identification would have testified to.  He asserts that the children were "coached" -- a contention contradicted by the attorneys' observations of the children and rejected by the trial judge -- and makes the blanket assertion that the testimony of children is "wholly unreliable."  Petitioner has failed to demonstrate that the state court's adjudication of the issue relating to counsel's decision to forgo the use of expert witnesses was contrary to or an unreasonable application of any federal law, or was an unreasonable application of any fact. Consequently, petitioner is not entitled to any relief on Claim B.6.

B.7.  *Failure to Present Adequate Opening Statement or Closing Argument* --- Petitioner asserted the claim in his Rule 32 petition that his attorneys at trial failed to present an

---

13      Even this speculation is of no moment, considering that Tweedy has stated that the petitioner admitted to him that he stabbed the victim.  (Doc.17, Ex. AA, p. 646). Knowing what Tweedy apparently knew, he would have no reason to spend his resources challenging any evidence related to the blood.  Furthermore, petitioner has not identified any actual expert testimony that could have been used to challenge the evidence against him.

adequate opening statement or closing argument.  He restates that claim here, in a scant two paragraphs.  (Doc. 1, ¶¶ 46,47).  The petition recites simply that, because the opening statement relied upon counsel's strategy (as described in the attorneys' affidavits) of holding the state to its high burden of proof and urging the jury to listen to the witnesses, it was therefore insufficient.  The Alabama Court of Criminal Appeals rejected the claim, stating that Borden had failed to show "how the result might have been different had his counsel presented another defense at opening."  (Doc. 6-6, Ex. F, p. 39).  This claim is essentially a different framing of his claim that counsel failed to present a theory of defense: it hinges upon the notion that holding the state to its burden of proof beyond a reasonable doubt is not a viable defense.  As discussed *supra*, this claim is without merit, and the state court's determination that counsel's decision to rely on that theory of defense was not ineffective assistance is not objectively unreasonable.

As to the closing argument, petitioner faults counsel for conceding to the jury that the evidence did not support the defense of mental disease or defect.  The Alabama Court of Criminal Appeals rejected the claim of ineffectiveness, stating that counsel knew that the evidence was not likely to support the claim unless Borden chose to testify, and noted that Borden had failed to "suggest[] another defense."  (Doc. 6-6, Ex. F, p. 39).  Petitioner has not offered any citation to law that demonstrates that the state court adjudication of the claims relating to the opening statement and closing argument were contrary to any federal law, nor has he shown that the court unreasonably determined the facts.  The simple fact is that, to date, Borden has failed to demonstrate that there was available to counsel then, or now, any defense beyond one of "reasonable doubt."  His attorneys at trial cannot be faulted to limiting their case to the only defense available to them.  Accordingly, the

state court's resolution of this claim is due deference under 2254(d)(1).  Therefore, Claim B.7 is due to be dismissed.

B.8.  *Failure to Object to Court's Failure to Administer Oath to Petit Jury* --- Petitioner next asserts as an ineffective-assistance-of-counsel claim that his attorneys failed to object to the trial court's failure to properly administer an oath to the *petit* jury.   In his direct appeal, Borden raised the substantive claim that the jury was unsworn.   In examining the substantive claim, the Alabama Court of Criminal Appeals determined that every member of the jury venire had been properly sworn, but that the record did not reflect that the court administered a second oath or "reminder"  after the *petit* jury was selected.  The appeals court undertook a "plain error" review of the record based upon the fact that the case was, at that time, one in which the death penalty had been imposed.  The court found that, based on a plain reading of the Alabama statute governing the oath and on Alabama case law, the failure to administer a second oath was "harmless error."  Borden, 769 So. 2d at 955.

Petitioner raised the claim as one of ineffective assistance of counsel in the Rule 32 petition.   The appellate court found the claim to be without merit because petitioner "presented nothing further to suggest error or prejudice beyond what was considered by the Alabama Supreme Court." (Doc. 6-6, Ex. F, p. 41).   Clearly, petitioner cannot meet the prejudice prong of the Strickland test where the state supreme court already has determined that the failure to give the oath was harmless error.  The opinion issued in the direct appeal leads to the inexorable conclusion that, had counsel

objected, the outcome would have been no different.[14]  Even taking into account the different standards of review applicable to "plain error" review and "preserved error" review, the Alabama Supreme Court's conclusion of harmless error eliminated the possibility of sufficient <u>Strickland</u> prejudice.  The state appellate court's rejection of the ineffective-assistance claim is due deference under 2254(d)(1).  Petitioner's claim set forth as Claim B.8. is due to be dismissed.

B.9.  *Failure to Request a Competency Hearing* --- Petitioner raised the claim that his attorney unreasonably failed to request a competency hearing.  Like the claim regarding the swearing of the jury, the substantive claim was first raised in the direct appeal, albeit not until he filed his petition for writ of *certiorari* in the state supreme court.  The Supreme Court of Alabama determined that the "judge could have concluded that there was 'no reasonable or *bona fide* doubt as to [Borden's] sanity' and, thus, that no further examination was required." <u>Borden</u>, 769 So. 2d at 956.  Petitioner then raised the claim as an ineffective-assistance claim in his Rule 32 petition, and the Alabama Court of Criminal Appeals held that the trial court's denial of the claim was proper. (Doc. 6-6, Ex. F, pp. 41-42).

It has been noted that two expert psychologists examined Borden pre-trial, determined that he was competent to stand trial, and so testified at trial.  The evidence regarding Borden's competency has further been reviewed by this court, *supra*.  Absent some showing that he was not

---

14      The only case cited in support of this claim is one that deals with whether the federal rule as to jeopardy attaching when the jury is empaneled and sworn is binding in Montana, where a state statute sets the swearing of the first witness as the time when jeopardy attaches.  <u>Crist v. Bretz</u>, 437 U.S. 28, 98 S. Ct. 2156, 57 L. Ed. 2d 24 (1978).  The court fails to see the relevance of this sole citation.

competent, or that the state courts misapplied some fact or law in their determinations of this issue, the petitioner cannot prevail on this claim that his attorney was ineffective for failing to request a competency hearing.  He has failed to demonstrate any prejudice because, even if a reasonable attorney should have requested a competency hearing, the outcome would not have been different because the evidence indicated that the petitioner was competent.  For all of these reasons, Claim B.9. also is due to be dismissed.

B.10. *Failure to Object to Counsel's "Direction" Regarding "the Law"* --- Petitioner asserts that his attorneys rendered ineffective assistance in that they failed to object to the following statement made by the prosecuting attorney during closing argument: "This defendant stabbed Nellie Ledbetter to death on her front porch on September 5, 1993.  He is guilty of the charge of capital murder.  That is the law!"  (Doc. 1, p. 19).   Petitioner raised a substantive claim on direct appeal regarding several statements made during the closing argument, and the appellate court noted that no contemporaneous objection had been made to the comments complained of.  Because the case was one involving the application of the death penalty, the appellate court nonetheless examined the claim under the "plain error" standard and determined that the prosecutor's closing argument, if error, did not constitute plain error.  Borden, 769 So. 2d at 960.

Petitioner first raised this claim as an ineffective-assistance claim in the Rule 32 petition, although the statement complained of here  was mentioned only as one of several allegedly improper statements made in closing argument to which counsel failed to object.  (Doc. 6-2,  Ex. B, pp. 111-12).  The Alabama Court of Criminal Appeals rejected the claim on grounds that Borden "failed to

show prejudice due to the bare allegations."  This adjudication on the merits is due deference unless the petitioner demonstrates that the state court's adjudication of this claim regarding counsel's performance "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

The instant petition does not cite any clearly established federal law that was contrary to the appellate decision.[15]  The only citation provided is to a state court case.  Furthermore, petitioner does not argue that the decision was based upon an unreasonable determination of the facts.  The argument made by the prosecutor related directly to the evidence at trial that petitioner stabbed the victim to death and, coupled with his prior murder conviction, constituted a capital offense. Petitioner has not alleged that, had counsel objected to that statement, the outcome of the trial would have been different, and there is no reason to believe that it would have been.  For all of these reasons, Claim B.10. also is due to be dismissed.

B.11.  *Failure to Litigate Mental Incapacity to Consent to Search* --- Petitioner argues that his attorneys failed to "effectively litigate" the issue of his incapacity to consent to the search

---

[15]    To the contrary, federal law requires that prosecutorial comments be reviewed not in isolation, but in the context of the trial as a whole, and that even comments that may constitute reversible error do not necessarily constitute error that render the trial so fundamentally unfair as to entitle a petitioner to relief in a *habeas* action.  Darden v. Wainwright, 699 F.2d 1031, 1036-37 (11th Cir. 1983).  Taken in the context of the entire closing argument and jury instructions, it is clear that the jury was informed that counsel's statements were not evidence, and that the judge would provide instructions as to what was the applicable law.

that led to the seizure of his bloodstained clothing and shoes.  This claim was raised in the Rule 32

petition, summarily denied by the circuit court, and discussed by the Alabama Court of Criminal

Appeals.  (Doc. 6-6, Ex. F, pp. 50-51).  That court noted:

> The circuit court properly found that Borden failed to allege a factual basis to show
> prejudice.  Therefore, Borden failed to meet the specificity requirements of Rule
> 32.6(b), Ala. R. Crim. P. or to state a claim upon which relief could be granted.
>
> Further, the circuit court also correctly noted that Borden did not argue that counsel
> failed to object to the voluntariness of the consent to search, but rather than he failed
> to adequately do so.  The circuit court found that the trial transcript showed that
> counsel had argued this issue to the trial court and had cross-examined the officer
> who had obtained the consent to search.  The record shows as to the latter that
> counsel asked the officer whether he helped Borden with any of the words of the
> consent form and ascertained from the officer that Borden could not read.  (Trial R.
> 761.)  He then extensively questioned the officer as to what steps he had taken to
> make sure that Borden understood the words and phrases.  (Trial R. 761-62.)  He then
> questioned the witness concerning Borden's educational level, his mental abilities and
> whether he was mentally retarded.  (Trial R. 762.)  Counsel then got the witness to
> acknowledge that Borden was "slow" and asked, "[k]nowing that, during this time
> that you were reading and explaining this form to him, do you think that you ought
> to have explained to him more (sic) this form to him before he signed it?" (Trial R.
> 763-64).
>
> Thus, Borden failed to meet the requirements of Rule 32.6(b) and Rule 32.3, by
> alleging what more his counsel could have argued or what further question he could
> have posed concerning the involuntariness of his consent to search due to his mental
> inabilities.

(Doc. 6-6, p.51).  This court must defer to the appellate court's reasonable conclusion that the

petitioner failed to show error by counsel.  The appellate court's decision that petitioner had not

alleged a sufficient factual basis for relief, and was thus meritless, was not objectively unreasaonble.

Consequently, Claim B.11. also is due to be denied.

B.l2.  *Failure to Object to Use of Prior Murder Conviction* --- Petitioner asserts that counsel rendered ineffective assistance in that he failed to object to the "constitutionality of Borden's 1975 conviction, which provided a predicate to the capital charge."  It should first be noted that this claim rests upon an assumption that the 1975 conviction was violative of petitioner's constitutional rights, and in a way that could have been discovered by counsel almost twenty years later.  The Supreme Court has definitively held that a state prisoner whose federal *habeas* petition challenges a predicate conviction that is "no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully)" cannot use the federal action to avoid procedural bars and time limitations that prevent attacking the older conviction.  Lackawanna County District Attorney v. Coss, 532 U.S. 394, 403, 121 S. Ct. 1567, 149 L. Ed. 2d 608 (2001); see also  Hubbard v. Haley, 317 F.3d 1245, 1255-56 (11th Cir. 2003).  *Habeas* relief is not available as a collateral attack on the predicate offense absent some showing that the petitioner was completely denied his right to counsel, and the predicate conviction is "regarded as conclusively valid." Lackawanna County, 532 U.S. at 403-04.

The petitioner raised this claim challenging the predicate offense in the Rule 32 petition, and the Alabama Court of Criminal Appeals concluded that the circuit court had correctly held that claims challenging the 1975 conviction were merely improper collateral attacks on the prior murder conviction, which could only be raised as a Rule 32 challenge to the 1975 conviction.  The requirements of Rule 32 could not be avoided simply by objecting to use of the of the 1975 conviction as a predicate for the capital murder charge prosecuted in 1994.  Such an objection was simply not available to counsel during the trial of the instant charge.  The court explained that

"because a counsel is not ineffective for failing to raise a claim that lacks merit, the circuit court properly summarily denied this claim by Borden raising challenges to his 1975 murder conviction." (Doc. 6-6, Ex. F, pp. 52-53).  Petitioner has failed to allege, much less demonstrate, that the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Accordingly, Claim B.12. is due to be dismissed.


       B.13.  *Failure to Object to Presence of Witness Edgar Ledbetter* --- Petitioner asserts that his attorneys acted unreasonably in failing to object to the presence in the courtroom of Edgar Ledbetter, the victim's husband, who also testified during trial.  A review of the transcript reflects that, during the court's discussion of the invocation of the rule excluding witnesses, the prosecuting attorney made the request that Ledbetter be allowed to remain in the courtroom.  Counsel for the petitioner did not object.  Ledbetter apparently remained in the courtroom throughout the trial, and also testified as a witness for the state.  Petitioner raised this claim in his Rule 32 petition, and the circuit court denied the claim.  He raised the claim again on appeal, and the Alabama Court of Criminal Appeals affirmed, stating:  "The circuit court correctly held that this claim should be dismissed because Borden failed to plead or provide a factual basis to prove prejudice."

       In short, the court of appeals concluded that petitioner had not alleged or shown how counsel's failure to object to the presence of Edgar Ledbetter during trial prejudiced the defense. There is nothing to show a reasonable probability that the outcome of the proceeding would have

been different if counsel had objected.  This adjudication on the merits is due deference absent

petitioner's showing that the  decision that "was contrary to, or involved an unreasonable application

of, clearly established Federal law, as determined by the Supreme Court" or "resulted in a decision

that was based on an unreasonable determination of the facts in light of the evidence presented in

the State court proceeding."  With respect to this claim, petitioner failed in his Rule 32 petition, and

in the instant petition, to allege facts that would prove that he was prejudiced by counsel's failure to

insist that Ledbetter be excluded from the courtroom.  A demonstration of prejudice not only is a

requirement under Strickland, but also comports with the purpose of the rule -- to avoid having a

witness improperly influenced by the testimony of another witness.   See Geders v. United States,

425 U.S. 80, 87, 96 S. Ct. 1330, 1335, 47 L. Ed. 2d 592 (1976).  Petitioner does not even allege that

Ledbetter's testimony would have been different had he not been present for the testimony of any

other witness.  Accordingly, the state court decision is due deference and, in the alternative, the claim

is insufficient to allege a claim for federal *habeas* relief.  Claim B.13., therefore, also is due to be

denied.


B.14.  *Counsel's Cumulative Errors Constitute Ineffective Assistance* --- Petitioner

asserts that the cumulative conduct of counsel, as set forth in Claim B.1.- B.13. constitutes

ineffective assistance.  The claim relating to the cumulative errors is addressed only in the most

fleeting manner by petitioner, and is not addressed by the respondents.  Given, however, that this

court finds that none of the individual allegations relating to counsel's conduct merits relief, and most

are wholly unsupported by any allegation of prejudice, there is no basis for a finding that the

allegations, cumulatively, set forth a viable claim.  Petitioner has failed to demonstrate that counsel's conduct was so egregious as to be outside the broad scope of competence expected of attorneys. Petitioner also has failed to demonstrate the actual prejudice required under Strickland.[16] Accordingly, Claim B.14. is due to be dismissed as without merit.

### 3.  Prosecutorial Misconduct --- Claim D

Petitioner argues that the prosecutor violated his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments.  The petitioner points to a statement made during closing argument: "This defendant stabbed Nellie Ledbetter to death on her front porch on September 5, 1993.  He is guilty of the charge of capital murder.  That is the law!" (Doc. 1, p. 25).  Although petitioner asserts that "[taken individually and together, these instances" violate petitioner's rights, there is no other "instance" set forth in the petition.  (Doc. 1, p. 26).[17]

Petitioner asserted a claim relating to the prosecutor's statement in the direct appeal.  (Doc. 6-8, Ex. H, pp. 69-70).  In the appeal to the Alabama Supreme Court, petitioner argued that the

---

16      Moreover, this claim has never been raised in the state court, and is therefore procedurally defaulted.  When a *habeas* claim has never been presented to a state court and there no longer exists any remedial vehicle by which the state courts may consider the claim, the United States Supreme Court has held that it is procedurally defaulted.  Teague v. Lane, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989).  The Court is not required to dismiss the claims as unexhausted because the defaults are apparent and it would be futile to send the petitioner back to state court only to be faced with them.  See Collier v. Jones, 910 F.2d 770 (11th Cir. 1990); Whiddon v. Dugger, 894 F.2d 1266 (1990), cert. denied, 498 U.S. 834 (1990).

17      Petitioner does not actually describe any statement made by the prosecutor that was a "fact not in evidence" or a "mischaracterization," but instead asserts as a general point that it is "reversible error for a prosecutor to argue facts not in evidence or to otherwise mischaracterize the evidence."  The court views this reference to the facts as a reference to "guilty" and "the law."

statement was both an expression of the prosecutor's opinion of guilt in violation of state law, citing an Alabama state appellate court decision, and a direction to the jury to convict that constitutes a "dogmatic statement as to what the evidence proves," for which he cites a Florida court applying Supreme Court law.  The state supreme court specifically addressed only another statement by the prosecutor, not complained of here, that Borden "is mildly mentally retarded so he has a license to kill."  The court, however,  also stated that it had conducted a plain error review of the entire record. Borden, 769 So. 2d at 960.  As respondents point out, it is not clear whether petitioner has exhausted this claim by raising it as a federal constitutional claim in the state courts.  Assuming, without deciding, that this claim was exhausted, it nevertheless is due to be dismissed.

Petitioner can prevail on this claim only if the state courts reached a conclusion that is contrary to clearly established Supreme Court precedent, or an unreasonable determination of the facts.  The petitioner cites only two Supreme Court cases: Berger v. United States, 295 U.S. 78, 84, 55 S. Ct. 629, 79 L. Ed. 1314 (1935), and Donnelly v. DeChristoforo, 416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974), but neither case stands for the proposition that a prosecutor's demand that the jury reach a particular verdict, or a comment on what the law is, constitutes a constitutional error for which relief is available to a *habeas* petitioner.  Moreover, Berger applies to prosecutorial misconduct that is "pronounced and persistent, with a probable cumulative effect upon the jury which cannot be disregarded as inconsequential," not to misconduct that was "slight or confined to a single instance." 295 U.S. at 89.  Certainly, the instant petition has not set forth any claim that the prosecutor's alleged misconduct was so pervasive or prejudicial as that made the basis of Berger. Donnelly further leads to the conclusion that where the remark does not infringe upon a specific right

46

-- such as the right to counsel or the privilege against self-incrimination -- relief is available only where the prosecutor's conduct has "so infected the trial with unfairness as to the make the resulting conviction a denial of due process." 416 U.S. at 643.

In the instant case, the prosecutor's statement may have crossed the line from arguing inferences to telling the jury what verdict to reach, and from arguing the facts to stating the law. The statement, however, taken in the context of the entire trial, was not so pervasive or clearly prejudicial that it could be deemed as depriving the petitioner of the "fundamental fairness essential to the very concept of justice." Donnelly, 416 US. at 642. Accordingly, the state court's adjudication of Claim D cannot be deemed unreasonable, and it is due to be denied and dismissed.

### B. Claims Procedurally Defaulted in State Court

The federal courts may not consider a claim set forth in a *habeas* petition when a petitioner has failed to follow the state's procedural rules for raising and properly presenting the claim in the state courts. The Eleventh Circuit has stated:

> The federal courts' authority to review state court criminal convictions pursuant to writs of habeas corpus is severely restricted when a petitioner has failed to follow applicable state procedural rules in raising a claim, that is, where the claim is procedurally defaulted. Federal review of a petitioner's claim is barred by the procedural default doctrine if the last state court to review the claim states clearly and expressly that its judgment rests on a procedural bar, Harris v. Reed, 489 U.S. 255, 263, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989), and that bar provides an adequate and independent state ground for denying relief. See id. at 262, 109 S. Ct. at 1042-43; Johnson v. Mississippi, 486 U.S. 578, 587, 108 S. Ct. 1981, 1987, 100 L. Ed. 2d 575 (1988). The doctrine serves to ensure petitioners will first seek relief in accordance with state procedures, see Presnell v. Kemp, 835 F.2d 1567, 1578-79 (11th Cir. 1988), cert. denied, 488 U.S. 1050, 109 S. Ct. 882, 102 L. Ed. 2d 1004 (1989), and to "lessen the injury to a State that results through reexamination of a

47

state conviction on a ground that a State did not have the opportunity to address at
a prior, appropriate time." McClesky v. Zant, ___ U.S. ___, 111 S. Ct. 1454, 1470,
113 L. Ed. 2d 517 (1991).

Johnson v. Singletary, 938 F.2d 1166, 1173 (11th Cir. 1991).  Thus, if a claim previously has been

presented to a state court in some form, a federal *habeas* court may refuse to hear that claim only if

the last state court rendering the judgment "'clearly and expressly' states that its judgment rests on

a state procedural bar." Harris v. Reed, 489 U.S. 255, 263, 109 S. Ct. 1038, 103 L. Ed. 2d 308, 317

(1989).

If the federal *habeas* court determines that a claim raised is procedurally defaulted, the

petitioner can obtain a review of the claim only by showing either "cause and prejudice" sufficient

to excuse the default or that failure to review the claim will result in "a fundamental miscarriage of

justice." Wilson v. Jones, 902 F.2d 923, 925 (11th Cir. 1990); Engle v. Isaac, 456 U.S. 107, 102 S.

Ct. 1558, 71 L. Ed. 2d 783 (1982); Wainwright v. Sykes, 433 U.S. 71, 97 S. Ct. 2497, 53 L. Ed. 2d

594 (1977).  The "cause and prejudice" test of Engle v. Isaac and Wainwright v. Sykes is in the

conjunctive; therefore, petitioner must prove both cause and prejudice.  The United States Supreme

Court summarized the "cause" standard in the following manner:

> In Wainwright v. Sykes, 433 U.S. 72 (1977), this Court adopted the "cause
> and prejudice" requirement of Francis v. Henderson, *supra*, for all petitioners seeking
> federal habeas relief on constitutional claims defaulted in state court.  The Sykes
> Court did not elaborate upon this requirement, but rather left open "for resolution in
> future decisions the precise definition of the `cause-and -prejudice' standard."  433
> U.S. at 87.  Although more recent decisions likewise have not attempted to establish
> conclusively the contours of the standard, they offer some helpful guidance on the
> question of cause.  In Reed v. Ross, 468 U.S. 1 (1984), the Court explained that
> although a "tactical" or "intentional" decision to forgo a procedural opportunity
> normally cannot constitute cause, id. at 13-14, "the failure of counsel to raise a

48

constitutional issue reasonably unknown to him is one situation in which the [cause] requirement is met." Id. at 14. The Court later elaborated upon Ross and stated that "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). We explained that "a showing that the factual or legal basis for a claim was not reasonably available to counsel, ... would constitute cause under this standard." Ibid. (Citations omitted.)

Amadeo v. Zant, 486 U.S. 214, 221-22, 108 S. Ct. 1771, 100 L. Ed. 2d 249 (1988).

The petitioner also must demonstrate that he was prejudiced; he must show "not merely that the errors ... created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982)(emphasis in original).

A federal habeas court, however, will consider a procedurally defaulted claim in the absence of cause if a "fundamental miscarriage of justice" has "probably resulted in the conviction of one who is actually innocent." Smith v. Murray, 477 U.S. 527, 537-38, 106 S. Ct. 2661, 91 L. Ed. 2d 434 (1986) (quoting, respectively, Engle, 456 U.S. at 135, and Murray, 477 U.S. at 496). To obtain review of a defaulted claim under this standard, the petitioner must present evidence of *factual* innocence of the crime, not merely legal innocence.

### 1.  Failure of Trial Judge To Recuse --- Claim C

Petitioner asserts that he was deprived of a fair trial in that the trial judge failed to recuse himself. He avers that the judge, who was once a lawyer in the firm that was hired to prosecute him for the 1974 murder, failed to identify his conflict or to recuse himself. This claim was first raised

in the Rule 32 petition.  (Doc. 6-2, Ex. B, pp. 61-67).  The trial court summarily dismissed the claim as procedurally barred pursuant to Rule 32.2(a)(3) and (5) of the Alabama Rules of Criminal Procedure because it could have been raised at trial or on appeal, but was not.  (Doc. 6-3, Ex. C, pp. 90-91).  The Alabama Court of Criminal Appeals specifically held that the trial court "did not err in applying the procedural bars to Borden's claims."  (Doc. 6-4, Ex. D, p. 5).  The respondents assert that this claim is procedurally defaulted because was raised in the state courts in the Rule 32 petition and was determined to be procedurally barred there.

In this case, petitioner first raised the claim regarding recusal in his Rule 32 petition.  The Alabama Court of Criminal Appeals determined that this claim (along with many others) had not properly been raised in Rule 32 petition, and was therefore procedurally barred from review in the appellate court.  The Alabama Court of Criminal Appeals clearly and expressly noted that the petitioner procedurally defaulted the claims by failing to raise it at trial or on appeal.  Accordingly, it is clear from the record that the last state court to review the claims set forth herein as Claim C "clearly and expressly" stated that its judgment rested on a procedural bar, which was independent and adequate under state law.  See Whiddon v. Dugger, 894 F.2d 1266 (11th Cir. 1990).

Petitioner has not attempted to show either "cause and prejudice" or "a fundamental miscarriage of justice" to excuse the procedural default.  There is no argument or averment attempting to explain why this claim could not have been raised at trial or on direct appeal  as

certainly the petitioner could have recognized the man who previously prosecuted him in 1975.[18]

Accordingly, Claim C is due to be denied as procedurally defaulted.


RECOMMENDATION

Accordingly, for the reasons stated above, the magistrate judge hereby RECOMMENDS that the petition for writ of *habeas corpus* under 28 U.S.C. § 2254 be DENIED and DISMISSED WITH PREJUDICE.

Any party may file specific written objections to this report and recommendation within fifteen (15) days from the date it is filed in the office of the Clerk.  Failure to file written objections to the proposed findings and recommendations contained in this report and recommendation within fifteen (15) days from the date it is filed shall bar an aggrieved party from attacking the factual findings on appeal.  Written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the specific basis for objection.  A copy of the objections must be served upon all other parties to the action.

---

18      Additionally, the claim is meritless.  The mere fact that the trial judge previously prosecuted this defendant almost twenty years earlier does not establish the requisite bias against the petitioner. Many former prosecutors go on to be judges.  Absent some basis for showing actual bias against the petitioner, it cannot be assumed that the trial judge lacked the impartiality required.  Cf. Griffin v. McNeil 667 F. Supp. 2d 1340, 1367 (S.D. Fla. 2009) (holding nothing inherently suspect about a judge presiding over a criminal trial after having previously presided over another trial of the same defendant).  There is no allegation or evidence of actual bias against the petitioner.

The Clerk is DIRECTED to serve a copy of this report and recommendation upon the petitioner and upon counsel for the respondents.

DATED this 5th  day of June, 2012.

T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE